UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

KENNEDY HODGES & ASSOCIATES LTD., LLP, d/b/a KENNEDY HODGES, LLP, and THREE COMMAS, LLC, individually and on behalf of all others similarly situated,
    *Plaintiffs*,

v.

TWIN CITY FIRE INS. CO.,
    *Defendant.*

No. 3:20-cv-852 (OAW)

## RULING ON MOTION FOR JUDGMENT ON THE PLEADINGS

This cause is before the court upon Defendant's Motion for Judgment on the Pleadings. *See* ECF No. 47 (with its memorandum in support, ECF No. 47-1, the "Motion"). The court has reviewed the Motion, Plaintiffs' opposition to the Motion, ECF No. 48, Defendant's reply in support of the Motion, ECF No. 49, all notices of supplemental authority, ECF Nos. 50, 54, 55, 57, 58, and 59, and the record in this matter. The court is fully advised in the premises. For the reasons discussed herein, the Motion is **GRANTED**.[1]

---

[1] The court finds that the briefs are thorough and complete and there is no need for oral argument on the Motion. Therefore, the request for oral argument is denied. *See* D. Conn. L. Civ. R. 7(a)(3) ("Notwithstanding that a request for oral argument has been made, the [c]ourt may, in its discretion, rule on any motion without oral argument.").

1

**I.      BACKGROUND**

Plaintiff Kennedy Hodges , LLP, is a Texas limited liability partnership that operates a legal business in Houston, Texas.  *See* ECF No. 1 at 2.  Plaintiff Three Commas is a Texas limited liability company that owns the real estate out of which Kennedy Hodges, LLP, operates.  *Id.*  Defendant Twin City Fire Insurance Company ("Defendant" or "Twin City"), is an insurance company that sold Plaintiffs an insurance policy (the "Policy") that covered the real property Three Commas owns and out of which Kennedy Hodges, LLP, ran its business (the "Covered Property").  *Id.* at 2, 4.  The Policy was effective for the period of May 6, 2019, to May 6, 2020.  *Id.* at 4.

In the height of the COVID-19 pandemic, various government officials in Texas issued orders requiring residents to minimize interpersonal contact and to stay within their domiciles ("COVID Orders").  *Id.* at 7–8.  As a result, the Covered Property was closed from March 18, 2020, through May 1, 2020.  *Id.* at 10.  Plaintiffs filed a claim against the Policy for the interruption of their legal business, and Defendant denied it.  *Id.* at 10–11.

Plaintiffs brought this action on June 19, 2020, purporting to represent a class of similarly-situated individuals.  ECF No. 1.  In the complaint, Plaintiffs assert two counts: the first seeks declaratory relief that the Policy does cover the losses Plaintiffs incurred as a result of the COVID Orders, and the second alleges that Twin City breached the insurance contract when it denied Plaintiffs' claim.  *Id.*[2]  Twin City filed the Motion on May 5, 2021, *see* ECF No. 47, and this matter was transferred to the undersigned on December 13, 2021, *see* ECF No. 52.  The Motion is now ripe for review.

---

[2] Plaintiffs also named the Hartford Financial Services Group in the complaint, but they have since voluntarily dismissed that defendant.  *See* ECF No. 29.  Twin City is the only remaining defendant.

## II.    LEGAL STANDARD

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings."  When reviewing a Rule 12(c) motion, "the court considers 'the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case.'" *L-7 Designs Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (quoting *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009)).  "A complaint is [also] deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint."  *Id.* (quoting *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir.2004)) (alteration in original).  The court "will accept all factual allegations in the complaint as true and draw all reasonable inferences" in favor of the complainant.  *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010) (quoting *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir.2010)).  A Rule 12(c) motion will only be granted where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Patel v. Searles*, 305 F.3d 130, 135 (2d Cir. 2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)).

## III. **DISCUSSION**

Both in Texas and in Connecticut,[3] an insurance contract is construed using the same general rules that apply to all written contracts.[4] The language in any insurance policy is given its ordinary meaning,[5] and if any term is ambiguous, that ambiguity is resolved by adopting the interpretation most favorable to the insured party.[6] Therefore, the court's review must start with a review of the Policy.

   a. **Policy Language**

Generally speaking, the Policy promises to provide monetary benefits in the event of "direct physical loss of or physical damage to" the Covered Property, provided that the loss or damage is caused by a "Covered Cause of Loss." ECF No. 39-3 at 30.[7] It specifically provides "Civil Authority Coverage" (when a civil authority bars the insured from the Covered Property because of a Covered Cause of Loss), and "Dependent Property Coverage" (when another property to which the insured provides services

---

[3] Both parties assert, and the court agrees, that there is no conflict between the relevant laws of the states of Texas and Connecticut, and therefore this discussion will not include a fulsome choice-of-law analysis. *See Lumbermens Mut. Cas. Co. v. Dillon Co.*, 9 F. App'x 81, 83 (2d Cir. 2001) ("The threshold choice of law question in Connecticut . . . is whether there is an outcome determinative conflict between the applicable laws of the states with a potential interest in the case. If not, there is no need to perform a choice of law analysis, and the law common to the jurisdictions should be applied.").

[4] *See Texas Farmers Ins. Co. v. Murphy*, 996 S.W. 2d 873, 879 (Tex. 1999). ("[I]nsurance contract interpretation is governed by general contract interpretation rules."); *Connecticut Med. Ins. Co. v. Kulikowski*, 286 Conn. 1, 5 (Conn. 2008) ("An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract. . . .") (quoting *Enviro Express, Inc. v. AIU Ins. Co.*, 279 Conn. 194, 199 (2006)) (alteration in original).

[5] *See Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W. 3d 828, 831 (Tex. 2009) "[W]e give policy language its plain, ordinary meaning unless something else in the policy shows the parties intended a different, technical meaning."); *Kulikowski,* 286 Conn. at 5 ("If the terms of the policy are clear and unambiguous, then the language . . . must be accorded its natural and ordinary meaning.") (quoting *Schilberg Integrated Metals Corp. v. Cont'l Cas. Co.*, 263 Conn. 245, 267 (Conn. 2003)).

[6] *See National Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co., Inc.*, 811 S.W. 2d 552, 555 (Tex. 1991) ("However, if a contract of insurance is susceptible of more than one reasonable interpretation, we must resolve the uncertainty by adopting the construction that most favors the insured."); *Kulikowski*, 285 Conn. at 6, ("[A]ny ambiguity in the terms of an insurance policy must be construed in favor of the insured . . . .") (quoting *Enviro Express*, 279 Conn. at 199).

[7] References to the Policy, which is filed at ECF No. 39-3, shall refer to the pagination supplied by the court's electronic filing system (CM/ECF), since the Policy itself has no uniform internal pagination.

sustains physical loss or physical damage because of a Covered Cause of Loss).  *Id.* at 40–41.  The term "Covered Causes of Loss" is defined as all "risks of direct physical loss," unless the risk is excluded or limited pursuant to other terms of the Policy.  *Id.* at 31.  Relevant here, the Policy has a "Virus Exclusion" that explicitly excludes loss or damage caused by a virus:

> We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss: (1) Presence, growth, proliferation, spread or any activity of 'fungi,' wet rot, dry rot, bacteria or virus.

*Id.* at 127.[8]

Twin City argues in the Motion that it is entitled to judgment as a matter of law because (1) there was no physical loss of the Covered Property, so the Policy as a whole is inapplicable to the loss Plaintiffs sustained, (2) there was no physical loss of any other property that would trigger either Dependent Property Coverage or Civil Authority Coverage, and (3) the Virus Exclusion clearly excludes coverage for the interruption in Plaintiffs' business caused by the COVID-19 pandemic.

Plaintiffs disagree.  They counter that (1) the term "physical loss" should be construed to include the loss of *use* of a property, such that Plaintiffs' inability to conduct business at their office while the COVID Orders were in effect gives rise to a valid claim against the Policy, (2) Twin City has failed to carry is burden of showing that the Virus Exclusion applies, and (3) even if the Virus Exclusion applies, a jury must decide whether regulatory estoppel should bar enforcement of the Virus Exclusion.

---

[8] The Virus Exclusion itself has two exceptions, neither of which are applicable in this case, but one of which is otherwise relevant and will be discussed infra.

The court agrees with Twin City. Even accepting (without so deciding) that the loss of *use* of a property satisfies the "physical loss" requirement of the Policy,[9] the plain language of the Virus Exclusion clearly shows that Plaintiffs' claimed losses are excluded from coverage, since those losses do not flow from a "Covered Cause of Loss," as that term is defined in the Policy. Further, because all the terms which provide coverage require a predicate "Covered Cause of Loss," the Virus Exclusion necessarily prevents Plaintiffs from being able to bring their claim under any coverage provision in the Policy.

For the reasons that follow, the court finds Plaintiffs' contrary arguments unpersuasive.

### b. **Applicability of the Virus Exclusion**

Twin City bears the burden of showing that an exclusion to insurance coverage applies in this case. *See Capstone Bldg. Corp. v. Am. Motorists Ins. Co.*, 308 Conn. 760, 788 n.24 (2013) ("The burden of proving that an exclusion applies is on the insurer . . . ."). The court disagrees with Plaintiffs' claim that Twin City fails to meet this burden; Plaintiff's reasons are: (1) Plaintiffs' losses were not caused by a virus, but by the COVID Orders, (2) Twin City's interpretation of the Virus Exclusion is too broad, or at least the Virus Exclusion is ambiguous such that it should be read in a manner more favorable to Plaintiffs, and (3) Twin City's application of the Virus Exclusion is contrary to Plaintiffs' reasonable expectation of the Policy's bounds of coverage.

---

[9] Still, the court acknowledges the clear, binding precedent negating this theory. *SA Hosp. Grp., LLC v. Hartford Fire Ins. Co.*, 2022 WL 815683 (2d Cir. 2022) (finding that a COVID-related business interruption did not stem from any direct physical loss or physical damage); *10012 Holdings, Inc. v. Sentinel Ins. Co., Ltd.*, 21 F.4th 216 (2d Cir. 2021) (finding that a business interruption caused by a COVID-related mandate did not amount to a loss involving physical damage to the insured's property).

6

i. ***COVID Orders***

Plaintiffs first assert that their business itself was not affected by COVID-19, and therefore was not shuttered by COVID-19.  Rather, Plaintiffs argue that the COVID Orders were the cause of the business closing, and "[t]he ***motivation*** for the [COVID Orders] is not part of the causal chain that caused Kennedy Hodges's 'physical loss' of property." ECF No. 48 at 20 (emphasis in original).

This assertion is clearly unsupportable.  Plaintiffs offer no legal reason why the chain of causation must stop with the COVID Orders.  To the contrary, the clear intent of the Virus Exclusion is to exclude coverage for losses caused by a virus, even if those losses also are the result of another cause or event.  The complaint makes clear that the COVID Orders were issued as a result of the proliferation of the virus.  *See* ECF No. 1 at 6–7 (noting the ill effects of the novel coronavirus and stating that COVID-19 was declared "a public health disaster for the entire State of Texas" by Texas authorities).  Thus, even if the coronavirus was not the *direct* cause of Plaintiffs' closure, it was certainly an *indirect* cause.  "Even if the principle of 'strictly construing' insurance policy exclusions counsels against reading the broad causation language in the virus exclusion to embrace every link in the causal chain . . . remoteness is not an issue here." *LJ New Haven LLC v. Amguard Ins. Co.*, 511 F. Supp. 3d 145, 152 (D. Conn. 2020).  Rather, a review of the complaint and the COVID Orders reveals that "it was a short step from the emergence of the virus to the curtailment of," Plaintiffs' business activities.  *Id.*  Therefore, this argument clearly lacks merit.

ii. ***Scope and Ambiguity of the Virus Exclusion***

Next, Plaintiffs argue that the Virus Exclusion should be read narrowly to apply only to viruses caused by or relating to fungi. They assert that a more fulsome review of the Virus Exclusion shows that the phrase "loss or damage" (as it applies to this exclusion) refers to perceptible structural damage to a Covered Property, such that it only excludes loss or damage caused by fungus-related viruses. At the very least, they assert, the Virus Exclusion is ambiguous, and where there is more than one reasonable interpretation of a policy term, courts must adopt the interpretation most favorable to the insured party.

But the court cannot find either that Plaintiffs' proffered construction is reasonable or that the Virus Exclusion is ambiguous. In the first instance, it is the ordinary understanding of the words "virus" and "fungus" that they are not the same thing. "Fungi and viruses are inherently different, take different forms, and behave differently in the environment." *LJ New Haven LLC,* 511 F. Supp. 3d at 154 (holding that a virus exclusion barred coverage for loss of business due to COVID-19 shutdown orders). And within the Virus Exclusion, the terms "fungi," "wet rot," "dry rot," "bacteria," and "virus" are separated by the disjunctive "or." It is therefore clear that "[t]he term 'virus' has a clear meaning of its own, not obscured by being placed next to the other terms. *Leal, Inc. v. Twin City Fire Ins. Co.*, 573 F. Supp. 3d 648, 656 (D. Conn. 2021), appeal withdrawn, No. 21-3023, 2022 WL 2103050 (2d Cir. Mar. 30, 2022). Furthermore, the word "fungi" is defined within the Virus Exclusion to mean "any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi." ECF No. 39-3 at 129. Accepting Plaintiffs' definition of "virus" would render it redundant and run contrary to the rule against surplusage. *See Patron v. Konover*, 35 Conn. App. 504, 518,

(1994) (noting that the Supreme Court of Connecticut "has frowned on interpreting a contract in a way that renders a clause in the contract mere surplusage and inoperative."); *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003) (noting that courts "must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless."). Furthermore, "[i]t would be incongruous to give 'virus' an unusually restrictive meaning" given how expansively the Policy defines 'fungi.'" *Cosmetic Laser, Inc. v. Twin City Fire Ins. Co.*, 554 F.Supp. 389, 402 (D. Conn. 2021) (referring to that the same virus exclusion at issue in this case). Thus, the court can find no basis upon which to adopt Plaintiffs' reading of the Virus Exclusion.

Further, the Virus Exclusion is not ambiguous. Plaintiffs refer to a limited exception within it, (the "Limited Coverage Provision") that covers loss caused by fungi and viruses only when certain prerequisites are met. While the Limited Coverage Provision contains its own definition of "loss or damage," the definition within this subsection is irrelevant to the construction of the term "virus" in the body of the Virus Section. Moreover, of the many causes for loss that *are not* covered by the Virus Exclusion; there is only a narrow subset for which the Limited Coverage Provision actually *would* provide limited coverage. In this way, only a sliver of clearly-delineated losses *are covered*, despite Plaintiffs' suggestion that the opposite is true. If the court were to construe the Virus Exclusion in the manner Plaintiffs propose, the provision would exclude coverage for a subset of damage (damage caused by viruses, fungi, etc.), only to immediately and irrationally reextend coverage to almost the exact same subset it just excluded. This would be an absurd reading of the Policy.

Thus, the court rejects Plaintiffs' proposed interpretation of the Virus Exclusion and consequently, concludes that the Virus Exclusion is not ambiguous. A plain and ordinary reading of the provision leads to no confusion. It is worded such that its intention can be discerned with legal certainty. And where "policy language is worded so that it can be given a definite or certain legal meaning, it is not ambiguous and [courts] construe it as a matter of law." *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W. 3d 154, 157 (Tex. 2003). Finding the virus exclusion unambiguous is consistent with opinions of this court[10] and with courts of numerous other districts.[11]

### iii. *Reasonable Expectations*

Finally, Plaintiffs aver that language disclaiming coverage, where any other cause or event also contributes to a loss or damage, "contravenes [their] reasonable expectations of coverage." ECF No. 48 at 24. Commonly called an "anti-concurrent causation clause," this language departs from a default interpretative rule used by courts stating that where a loss results from two independent causes, one of which is covered by a policy and one of which is not, the policyholder shall be entitled to insurance benefits.

---

[10] *See, e.g., Leal,* 573 F. Supp. 3d 648; *Pats v. Hartford Fire Ins. Co.*, No. 3:20-cv-00697 (SALM), 2021 WL 5988571 (D. Conn. Dec. 17, 2021); *DOTEXAMDR, PLLC v. Hartford Underwriters Insurance Co.*, No. 3:20-cv-698 (MPS), 2021 WL 3409279 (D. Conn. Aug. 4, 2021); *Little Stars, LLC d/b/a The Little Gym of Gilbert v. Sentinel Ins. Co., Ltd.*, No. 3:20-CV-00609 (AVC), 554 F.Supp.3d 378 (D. Conn. 2021); *Dr. Jeffrey Milton, DDS, Inc. v. Hartford Cas. Ins. Co.*, 588 F.Supp.3d 266 (D. Conn. 2022).

[11] *See, e.g., ABC Children's Dentistry, LLC v. Hartford Ins. Co. d/b/a Sentinel Ins. Co.*, No. 1:20-CV-10044 (NLH)(MJS), 2021 WL 4272767 (D.N.J. Sept. 21, 2021); *Hamilton Jewelry, LLC, d/b/a CF Brandt Jewelers & Jewelry Place by the Bay v. Twin City Fire Ins. Co.*, No. 8:20-CV-02248 (PWG), 560 F.Supp.3d 956 (D. Md. 2021); *Ets-Hokin v. Sentinel Ins. Co.*, No. 4:20-cv-06518 (JST), 2021 WL 4472692 (N.D. Cal. Aug. 27, 2021); *Identity Dental Marketing, LLC v. Twin City Fire Ins. Co.*, No. 20- CV-06883, 2021 WL 3524111 (N.D. Ill. Jul. 19, 2021); *Totally Tickets v. Sentinel Ins. Co.*, 549 F.Supp.3d 1309 (W.D. Okla. 2021); *Hartford Fire Ins. Co. v. Moda, LLC*, No. X06-UWY-CV-20-6056095-S, 2021 WL 2474216 (Conn. Super. Ct. June 15, 2021); *Pure Fitness LLC v. Twin City Fire Ins. Co.*, No. 2:20-CV-775-RDP, 2021 WL 512242 (N.D. Ala. Feb. 11, 2021); *Moody v. Hartford Fin. Grp., Inc.*, 513 F.Supp.3d 496 (E.D. Pa. 2021); *Digital Age Mktg. Grp., Inc. v. Sentinel Ins. Co. Ltd.*, 512 F.Supp.3d 1270 (S.D. Fla. 2021); *Franklin EWC, Inc. v. Hartford Fin. Servs. Grp., Inc.*, 506 F.Supp.3d 854 (N.D. Cal. 2020); *Founder Inst. Inc. v. Hartford Fire Ins. Co.*, 497 F. Supp. 3d 678 (N.D. Cal. 2020); *Wilson v. Hartford Cas. Co.*, 492 F. Supp. 3d 417 (E.D. Pa. 2020).

*See generally, JAW The Pointe, L.L.C. v. Lexington Ins. Co.*, 460 S.W.3d 597, 608 (Tex. 2015). There is no authority prohibiting insurers from contracting away from this default, though, and courts in Connecticut and Texas have recognized the validity of such clauses. *See id.* (upholding the applicability of an anti-concurrent causation clause under Texas law); *LJ New Haven LLC*, 511 F.Supp.3d at 152 ("Connecticut courts have recognized . . . that the 'anti-concurrent causation' clause in the virus exclusion . . . displaces the 'efficient proximate cause' analysis . . . ."). Therefore, there is nothing facially unenforceable about the provision.

Furthermore, in an insurance contract case, "[t]he determinative question is the intent of the parties . . . *as disclosed by the provisions of the policy*. . . ." *R.T. Vanderbilt Co. v. Cont'l Cas. Co.*, 273 Conn. 448, 462 (2005) (quoting *Allstate Ins. Co. v. Barron*, 269 Conn. 394, 406 (2004)) (emphasis added); *see also Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 746 (Tex. 2006) ("As with any other contract, the parties' intent is governed by what they said, not by what they intended to say but did not."). "[T]he policyholder's expectations should be protected as long as they are objectively reasonable from the layman's point of view." *R.T. Vanderbilt*, 273 Conn. at 463 (quoting *O'Brien v. United States Fidelity & Guaranty Co.*, 235 Conn. 837, 843 (1996)). Here, the court has already determined that Plaintiffs' interpretation of the Virus Exclusion is not objectively reasonable. And a policyholder's alleged reasonable expectations cannot "render meaningless the words by which the parties expressed their bargain . . . ." *Hammer v. Lumberman's Mut. Cas. Co.*, 214 Conn. 573, 591 (1990) (quoting *Dinkowitz v. Prudential Ins. Co.*, 216 A.2d 613 (1966)). Given its "natural and ordinary meaning," the Policy, as

11

construed herein, "expresses the reasonable expectations of the parties," *id.*, and the virus exclusion precluded insurance coverage for Plaintiffs' losses.

### iv. *Limited Coverage*

Plaintiffs footnote, with little supporting argument, that even if the court determines that the Virus Exclusion is unambiguous and precludes Plaintiffs' claims, they still should be permitted to recover benefits under the Limited Coverage Provision. Specifically, the Limited Coverage Provision states that the Policy will cover losses and expenses resulting in a virus for a period of up to 30 days. ECF No. 39-3 at 129–30. However, that provision only applies where Time Element Coverage applies. Time Element Coverage is "'a term of art in the insurance industry referring to coverages measured in time, including,' as relevant here, Business Income, Extra Expense, and Civil Authority coverage." *Cosm. Laser, Inc.*, 554 F. Supp. 3d at 394. However, as noted supra, the Policy still only extends Time Element Coverage where there is a Covered Cause of Loss, and the Virus Exclusion still excludes Plaintiffs' circumstances from being a Covered Cause of Loss. The provision Plaintiffs refer to here merely states that where an exception to the Virus Exclusion applies, additional Time Element Coverage (such as Civil Authority Coverage) may be available. But because Plaintiffs do not qualify for an exception to the Virus Exclusion (and do not argue they could fall into one of those exceptions), they cannot recover under the Limited Coverage Provision.

Thus, Twin City has carried its burden of showing that the Virus Exclusion unequivocally applies to Plaintiffs' claim.

### c. Regulatory Estoppel

Finally, Plaintiffs argue that even if the Virus Exclusion applies, and even if it excludes coverage for their claim, Twin City should still "be estopped from enforcing the Virus Exclusion on principles of regulatory estoppel and public policy." ECF No. 48 at 25. Specifically, Plaintiffs assert that in 2006, insurance industry trade groups lobbied regulators to approve virus exclusions such as the one at issue here. Plaintiffs allege that the trade groups represented that the exclusions were intended to *clarify* that coverage was never available under property policies, like the Policy, for losses resulting from disease-causing agents. Plaintiffs assert that this was a misrepresentation, though, because the trade groups were not merely *clarifying* existing terms, but affirmatively *limiting* those terms.

Regulatory estoppel is a doctrine similar to judicial estoppel which essentially "prohibits parties from switching legal positions to suit their own ends." *Sunbeam Corp. v. Liberty Mut. Ins. Co.*, 781 A.2d 1189, 1192 (2001). "Unlike collateral estoppel or res judicata, it does not depend on relationships between parties, but rather on the relationship of one party to one or more tribunals." *Id.* Some courts have found regulatory estoppel applicable where the insurance industry has represented to regulators that new language will not result in significant decreases in coverage, but then use that new language to argue the opposite position when claims are made. *See id.*; *Morton Int'l, Inc. v. Gen. Acc. Ins. Co. of Am.,* 629 A.2d 831, 874 (1993).

Regulatory estoppel is not uniformly accepted by courts, though, and neither Connecticut courts nor Texas courts have signaled unqualified approval of the doctrine, particularly where policy language is unambiguous. *See, e.g., Frosch Holdco, Inc. v.*

*Travelers Indem. Co.*, No. 4:20-CV-1478, 2021 WL 1232777, *6 (S.D. Tex. Feb. 11, 2021) (stating that "there is no basis in Texas law for applying regulatory estoppel."); *Buell Indus., Inc. v. Greater N. Y. Mut. Ins. Co.*, 259 Conn, 527, 547 (2002) (declining to apply the doctrine when presented with a "clear and unambiguous" term).

However, even supposing that regulatory estoppel were accepted in Texas and Connecticut, the court could not find it applicable here.  By Plaintiffs' own allegations, insurance industry trade groups told regulators that the virus exclusion would exclude coverage for losses resulting from disease-causing agents.  And in fact, pursuant to virus exclusions in insurance policies, insurers have denied claims for losses resulting from disease-causing agents.  Absent any misrepresentation, there is no possible application for regulatory estoppel here.

In summation, Twin City has shown, unequivocally, that the Virus Exclusion operates to exclude coverage for Plaintiffs' claim.  Consequently, they have shown that they are entitled to judgment as a matter of law.

## IV.   CONCLUSION

Accordingly, it is thereupon **ORDERED AND ADJUDGED** as follows:

1. The Motion for Judgment on the Pleadings, ECF No. 47, is **GRANTED.**
2. The Clerk of Court respectfully is asked to enter judgment in favor of the Defendant and to close this case.

**IT IS SO ORDERED** at Hartford, Connecticut, this 5th day of April, 2023.

/s/

OMAR A. WILLIAMS
UNITED STATES DISTRICT JUDGE